Judges of the United States Court of Appeals for the 4th Circuit Mr. Kaufman, we're ready to hear from you Thank you, Your Honor, and may it please the Court Defendants Air Program is the most ambitious mass surveillance program ever deployed in an American city relying on military technology developed for battlefields abroad If this entirely indiscriminate surveillance is allowed to go forward, it will drastically change our democratic society This is a system that for 180 days and 12 hours a day is collecting plaintiffs and 600,000 other Baltimoreans' movements across their city For months, defendants have explained that this program is designed to identify people and vehicles Under the program, the DPD is building a massive database of location information captured from the sky As the contract establishing the program lays out, video recordings from above will be matched with other surveillance images and data including information from license plate readers and ground surveillance cameras The results will be the identification of suspects, witnesses, and untold number of other people who come into contact with them In this litigation, the DPD suggests that there is much its wide-area surveillance system cannot do But if the program couldn't identify people, it would not exist And the truth is that this sophisticated system is capable of doing what the DPD designed it to do The Air Program violates plaintiffs' rights under the Fourth and First Amendments And respectfully, this court should bring it to the ground Turning first to the Fourth Amendment question about whether defendants' collection of plaintiffs' location information is a Fourth Amendment search It is a search, and the reason is straightforward based on the reasonable expectation of privacy tests Society does not reasonably expect that government cameras in the sky will record the whereabouts of an entire city's population second-by-second for 12 hours a day and 180 days This is exactly the kind of truth-permeating police surveillance that Chief Justice Roberts held in Carpenter was off the table Now, the district court held that the Air Program... Yes, sir Counsel? Yes, sir Isn't this a... You say this is unprecedented, but isn't it in some respects a narrower program than Carpenter? For example, in Carpenter, there was a... 100 locational data points were collected over a seven-day period of time And the court noted that Carpenter was a narrow holding And that the duration of the surveillance made a big difference And as I understand it, this didn't go on for seven days That the longest they could identify somebody was really about 12 hours Because the drones don't fly during the evening Yes, your honor So I think you're referring to what the district court called the gaps in the Air Program's collection because it doesn't fly at night And I think there are a couple of responses to that First, as we explained in the brief, it will be quite easy for the BPD to correlate data across days Making this a much longer collection than was at issue in Carpenter Indeed, the BPD does not argue that tracking across days is impossible at all Your honor, this is Judge Niemeyer I'm not sure what you just said is supported by the record It seems to me what we're examining is a supported search from these airplanes We're not examining the nature of the investigation where various searches and data are collected and put together And if I understand correctly, these data that are collected represent a person as one pixel And it can't identify I've looked at the pictures I can't even identify the persons myself in the pictures And the persons cannot be identified by clothing, by uniform, by size, color, shape It's a single pixel And if the pixel goes under a tree or goes into a house, you don't know whether it comes out And clearly they say that you cannot pick up the pixel from the prior day Because you can't identify one from the other You can't distinguish them And so you don't know whether you're looking at the same person or a different person This is so generalized that I'm not sure it even fits within the language of the Fourth Amendment Protecting the privacy of individuals or protecting people in their papers and houses and so forth This is a generalized photograph taken 32 square miles or whatever it is So that each person is only a pixel that can't be identified It could never be used for identification or it could never be used for conviction, suspicion or anything else I find this far different from Carpenter Where the individuals were identified specifically by their telephone numbers And their movement from tower to tower on the data Yes, thanks, Your Honor It's a really important question and I think there's a couple of responses So first, it is absolutely in the record that the BPD says it is possible to track people across days What Mr. McNutt, the designer of the system, said in JA 122 paragraph 14 Is that it can't do it reliably So it's absolutely possible to do that In other words, I don't know if you can just look I mean, I'm looking right now as we talk at pictures here And there is no way of identifying a pixel on September 20 And then conclude that the same pixel appears on September 21 All the pixel does is identify the single pixel Identifies what they believe is a person or what is a person And the automobiles are not much better They can't determine make, model, shape, any identifying factors They say they can't even identify color So if you're going to start with a Fourth Amendment discussion You've got to start with the facts presented And the facts presented are a device that collects data from navigable airspace Which represents people only as pixels And I'm not sure you can search at all You're right, each photograph is a pixel But what is at issue here and what is protected by Carpenter Is the tracks of people over time, their movements over time And the fact that one individual pixel can't show an identifying feature Is irrelevant because the contract itself And the thing that plaintiffs have challenged in this lawsuit Is what the contract says is one system, the air program It is photographed from the sky, linked with ground surveillance technologies That absolutely are identifying, automatic license plate readers The program doesn't link with the cameras What they do is they get data from the cameras And then they go back and look at the data from the airplane To see if it corresponds I'm not even sure how that helps They certainly can't determine that a particular pixel belongs to a particular person With due respect, I believe that is incorrect Because that is exactly what the program does And that's how the contract explains what it does And that's how the BPD explained over many months That is how it will identify suspects, witnesses and others that come into contact with them They will look at the ground cameras Find an image on the screen or a license plate And then go to their repository of location information And from that, they will be able to follow that pixel around Anywhere they want, knowing who it is Excuse me, counsel Yes, sir One of the problems I have is that we're not exactly sure What is done once the data is collected And what troubles me here is You're asking us to rule this program invalid Sort of ab initio Wouldn't it be better to await a more concrete setting Such as a suppression hearing Or such as a case in which the actual working of the program Were perfectly clear to us We're asked to just sort of cut this off at such a preliminary stage But I mean, what real life difference is it going to make in a criminal case And when we get If the evidence is used in some way In a particular prosecution Isn't the appropriate way to address the program When the government seeks to introduce that evidence And someone is going to object to the use of it Wouldn't we have a more concrete idea of how this works Your honor, I absolutely appreciate the sentiment there But I think what's different about this This is not a situation where the government is engaging in surveillance That's unannounced And then we need to wait until there's more facts Or a concrete situation to litigate it in a criminal context Here, the BPD has put out its contract And told us exactly what it is doing It lays all of this out in the contract And I don't think it's tolerable To simply allow the government to maybe violate constitutional rights For months on end Because of questions there Because we have no questions here The contract is there It explains how it will identify people It explains the cache of data that it will render every day For 12 hours a day And as we've shown I know it's hard for you to hear Maybe sometimes But whose constitutional rights is it violating There's no They're not going into Police are not going into anyone's home They're not making a deep dive into anyone's cell phone You know, there's no search of an individual's dwelling Or his car Or his belongings There's simple observance of public movements But the And the observance of those public movements Is not in somebody's dwelling place It's out in the open On a public street Where people's interview Where people's interest in privacy Is minimal And we're not talking about a policeman using excessive force Which represents a classic Fourth Amendment claim So who's Is it the right of the pixel Whose Fourth Amendment rights are being violated I mean, it doesn't seem to me To the program doesn't seem to me To take a personal tour Into somebody's papers or effects Or the kind or computer Or the kind of information That we would all regard As very personal and very private It's just It is just A picture of mass public movements Where fortunately you can't even make an identification With respect to the pixel As to the race or to the gender or ethnicity Or anything else about it And so I just want to know Where is the privacy interest Of an individual here Given the fact that our private effects And the most personal parts of our lives In our automobiles And in our homes None of that's being invaded Thank you, your honor I just disagree with that Because that wasn't exactly what was at issue in Carpenter And many courts before Carpenter Agreed with you that the whole of a person's movement Because they take place in public Are not protected under the Fourth Amendment And Carpenter rejected that And the government argued it Both in Jones and Carpenter That the fact that people are moving around in public Means that they've forfeited a right to privacy And that's absolutely not the case That argument fails to take into account Judge Wilkinson's observation Which is that here The data are not individualized They're not focused on the identity of a person They don't provide information Except movement of a pixel And Carpenter took individualized information The cell phone operation Where people had thought they were speaking in private And had their cell phones tracked And attributed directly to the individual The data that you have in Carpenter You could specifically identify a person Here you can't Your honor, I think that that's wrong And if you just look at Chief Justice Roberts in Carpenter He explains that the search question hinges On whether the government could In combination with other information Deduce a detailed log of movements And again, cell phone requests are about phone numbers Not necessarily about people They might not contain very much information at all But when the government requests a set of it That could reveal a person's information Even though the government needs to do additional work To make meaning from that And draw out the kind of privacy of life That Carpenter is concerned with That constitutes a search And that's exactly what's going on here Not just by conjecture But explicitly in the contract I understand that looking at the pixels on the page Makes it seem like this is a completely harmless case But again, I would bring you back to Why the BPD is doing this in the first place If these images If the collection of this over time Did not allow the BPD to identify people Human beings Specifically It would not be doing it And it lays all of this out in its presentation And in the contract That that is exactly the goal That is exactly the capability That is what happened and how it works For the military overseas And that is what it is bringing What it is, counsel, is collecting evidence That might lead to an arrest I mean Law enforcement Collects evidence Some of which might be private You might come upon somebody's shirt Near the scene of a murder Or you might come upon Any number of Forensic clues Or fingerprints or whatever And so I just wonder whether this Program is best seen as part Of an evidence Collection effort An evidence collection effort How does it How is it distinguished From Arriving on the murder scene And coming upon a piece of Clothing which has in fact a much more Intimate association with an individual Than this does Your honor, I would just refer to the Language of the contract itself Which says that PSS will Integrate its imagery data analysis With BPD systems Including the BPD city watch network Of ground-based surveillance cameras And its ALPR cameras That is the program that this contract Establishes and that is what the plaintiffs have challenged And I appreciate The point that you're making about The diversity of Sources of evidence in criminal cases And the way that police need to do their work But what is being done here Is bringing these technologies To bear in a single program And that is what we have challenged And that allows the identification Of people But these Purported searches Are the collection of data From an airplane And that is the Specific analysis The fact that you can collect data from many sources And overlap them And then reach some conclusions I think is quite different While Carpenter made some reference to that Carpenter did Note that the cell phone Tracks nearly exactly The movements of its owner And talks about it goes into private residences Doctors offices Political headquarters And other potentially revealing locations Including showers And this is a quote right here Accordingly when the government tracks the location of a cell phone It achieves near Perfect surveillance As if it had attached an ankle monitor To the phone's user That is a lot different Than taking a picture of a pixel Where you don't know Who the pixel is Or where the pixel is And you can't even track it Probably most of those pixels are tracked at most for a few hours All the Go under a tree Or go into a house Or go into a store And the pixel is lost Somebody Just a minute Somebody goes into a store 7-Eleven to buy a drink And then the pixel comes out You don't even know whether that's the pixel that went in I mean The data is so small And so generalized That the question is whether it is a search And while the data might be useful In helping The investigation of crime With the use of other data systems If all the data systems Are satisfied There's nothing wrong with that Thanks I know I'm over time I appreciate you going along I just want to make it a little more concrete About why the concerns you're raising Don't render this not a search under carpenter So for example Let's say for example That an individual leaves their home Every morning at 9am And they go stop off for coffee Three blocks down the road And then they take the same streets to work And then after work Or in the middle of work They go to the same lunch spot As a study in the record points out You do not need very many location points at all To identify a unique pattern of movement On behalf of an individual And again that is what carpenter protects Carpenter protects the whole Of a collective individual's movement Over time And that is what these cameras are capturing Whether they're pixels in the first instance Or not Is irrelevant to the fact that the pattern of movement The overall movement of these pixels Around the screen Will allow for the derivation of identifying information About those individuals And it will also allow for the identification Of their associations And all the kinds of private things That the carpenter court And Justice Sotomayor and her judge concurrence Felt that were very important Even in the short term To the fourth amendment question And that is why the carpenter court Landed the way it did And just another point on the specificity Of the data at issue in Carpenter While it is true that the court Wrote about the fact that people Bring their cell phones anywhere I think that that point was more about The fact that this phone Was always going to be generating information But the information generated by A cell phone ping in Carpenter Is not nearly as precise As the information collected from the cameras In the sky in this case And that's because That's a gross overstatement The Supreme Court in Carpenter Talked about perfect surveillance That matched putting an anchor On an individual The data that comes from the sky Doesn't even know who the person is Your honor Your honor I respectfully disagree If you look at Carpenter at 138 At Supreme Court 2218 The court explained That the records at issue Place a person within a Quote, wedge-shaped sector Ranging from one-eighth to four square miles This is a large area And even in that case The court called it inescapable And the information That law enforcement gets When it receives information Pursuant to a cell phone location request Is generalized to That wedge-shaped sector size It does not tell you that the person was in the shower It just tells you that they were in the zone Now, the fact that the person Brings the phone into the shower Of course means that if they get a call It might ping the tower and generate information And it's true that when people go inside They're not generating information In this case But one difference I think that's important here From this case in Carpenter Is that in Carpenter And the facts in Carpenter prove this You could have turned off that surveillance At any time. You can leave your phone at home You can turn it off You can do any number of things To make that stop when you're in public And here, it is impossible to escape The surveillance when you are moving about In public And I think that's a really important point to recognize You can go into a store You can go under a tree I mean, every time you go into your house Or go into a building You're protected Your honor, I don't think that That absolutely resets the clock Every time you go into a private space And I understand the pixel point And I see why Looking at a map, it makes it very difficult To appreciate how this could be private But when the government is watching people From the sky, and they see dots go in and out Of course, there might be three or four That come out, and they might need to follow a trail That leads to a false event But eventually, they're going to be able to figure out Which of the pixels Left the site That they were following Because that is what this map Of location movements That's collected over 180 days Allows them to do And you don't need to take my word for it, your honor This is exactly what the DPD has said It is going to do with this program That is what Ross McNutt has sold this program To the city, and hopefully to many more Has said exactly how this will work And if the protection That you're talking about, going inside Somewhere private and escaping the cameras momentarily Were sufficient protection To render this information Meaningless, the DPD would not be Engaging in it right now Well, let me say, Mr. Kaufman, one thing Just to take a step back here This program Is in response To a very serious problem And the Murder statistics In the city Are, you know Tragically Quite deplorable And Fewer and fewer Of the cases seem to be resolved And more and more of the homicides Seem to be Taking place And You know, I know that the Fourth Amendment Doesn't Go out When you have This kind Of loss of life, but On the other hand, the touchstone Is one of reasonableness And if we just If we knock down Every initiative At the outset and say, no This won't work, no this won't work Because technology is Always going to have privacy Implications It has utility In evading law enforcement And it has utility in apprehending Those who Commit very serious crimes But what If We say no Because the broader picture is No, you can't use technology Because the technology Has implications for personal Privacy What do We do About The tragic Numbers unfolding in Baltimore Each of which Represents You can look at statistics And they're just Arabic numbers But each of them represents A very precious Human life That has been taken Sadly, tragically And There has to be Some Ability under the Fourth Amendment To respond to Circumstances That as far as I can See and as far as I think Judge Bennett could see Are really quite dire I recall Judge Bennett's word when he said Not even the presence of the Pandemic has slowed in any way The rise in homicides And so if we Back down everything Right at the start Where does that leave The city of Baltimore Your honor I appreciate the question And it is heart-wrenching And no one knows the tragedy Of the loss of life More than the plaintiffs themselves In this case Whose work is dedicated To helping solve that problem In Baltimore But the fact remains that the BPD Is the only police department in the world Using this technology And they're not the only ones That are facing a serious crime problem And sometimes the Fourth Amendment Simply takes tools off the table For law enforcement And that is both a frustration To law enforcement at times But it's also the genius Of the Fourth Amendment Because what the Fourth Amendment Says is that you need To have a reason To engage in this kind of activity You need to have a Constitutionally adequate reason And with Respect to the crime problem that's at issue here You know the government The BPD has never argued That there is a special need in this case That gets it out of the warrant requirement In order to engage in this kind of surveillance And it couldn't Because it is pure law enforcement reason The government didn't even try to make A sort of creative special needs argument That this is such a serious crime problem That it should be Analyzed under special needs and overall reasonableness And I don't think that would have succeeded Given that, you know, the cases And the others that we cite in the brief But the government didn't even try to make that argument And I think the case simply comes down to You don't have to make it in terms of A special need doctrine You can just make it in terms of The general need Under the fourth amendment A reasonable need to respond to conditions On the ground You know You raised some very thoughtful Objections To this program At the outset And it seems to me That the BPD Has cut it way back As I understand If the drones were Flying Day and night To begin with And now that's been Trimmed back And I don't think What I'm saying is That it seems to me That Many of your objections Were listened to That they were responded to And that You have a situation In which All the things that we are Concerned about These days And quite legitimately so We are concerned About the excessive use of force Of police force But that isn't present here And we are concerned About individual interests Of privacy And one's home And one's cars And one's intimate effects But that's not invaded here And So I I worry that if even this Is off balance And illegitimate Where do we go from here? We just sit back and allow The problem to get worse And worse and worse What do we do? Well your honor I appreciate again The sentiment here But just one factual thing I don't believe that the planes ever flew 24 hours a day And whatever the BPD did to revise Its original trial program That it conducted in secret by the way In response to concerns from people like the plaintiffs From the ACLU and other advocates That's appreciated But the fourth amendment is a legal limit On this program Whether or not the BPD engaged with criticisms Of it Now two points your honor You've said a few times that Well I'm just making I think you've made a thoughtful contribution To the The program And that the civil libertarian objections Were certainly worth considering And they were worthwhile points to raise But I thought the program As a result of the Dialogue that went on And as a result of the Efforts that the city and the BPD And the contractor And others Made to tailor this program And make it more and more reasonable Um It seems to me that they've made Quite an effort here Your honor I wouldn't dispute that they have Made an effort but You know the fact that those efforts were made And that that Ended up being what you know The polity might have accepted as a reasonable Policy outcome does not have an effect On whether the fourth amendment is violated I just want to come back to a point That you have raised a few times Respectfully you've said Repeatedly that there's not an invasion Of an effect or a person Or a home here and I think that Carpenter absolutely Says the contrary It says that people's movements over time Are on par with the kinds Of effects and private Other private interests That the constitution And the fourth amendment respects What information Could the bpd Collect from the air Or is navigable airspace Simply Per se off limits I mean are there If this information Goes too far What information Could the bpd Or any city Collect from the air are we simply Ruling the air off limits I think that's an excellent Question your honor and the answer is absolutely Not the key feature Of this program is its persistence Over time I mean 12 hours a day Is a huge amount by Itself but this continues for 180 Days and we don't take issue with The supreme court cases that the district Court cites and that the government cites in this case Those cases are good law And they approve certain kinds of fleeting Brief targeted aerial observations And that is absolutely Fine and there is A big gap between Those cases and what's happening here as we Say this program is light years beyond Those cases and whether those are the Absolute limit or not is not Really raised by this case because this is a case Where it is not simply You know a government sending up a police Helicopter as they've done for decades To monitor a situation on the ground Temporarily this is a Programmatic system of mass collection Of location information that is digitized Put into databases and linked With other absolutely identifying Information all under a private Contract and The result of that is an absolutely Powerful machine to identify People through their movements And where they move around the city Revealing incredibly amounts Of private information about them And so to the extent That there is a concern from the court That holding this particular program The most invasive Individual About people you can't identify I think that's Incorrect your honor as we sort of Talked about a few times and as we do explain In the brief this is not Not this is not anonymous Information indeed I really think The dots That anonymous information we don't know The race we don't know the gender we don't Know that there are no facial features Involved we don't know what The individual looks like we don't know What their Language is Your honor we don't know that yet But they didn't know that yet in Carpenter either and the thing that Carpenter Was talking about was not any of those Features what it was talking about The private information was not those Features it was the movement Of the person it was the collective Movement of the individual over time That is what is protected under the fourth Amendment under Carpenter and It is simply not true That it is impossible to derive To derive identifying Information from this program Mr. McNutt says it in his declaration He says point blank That it is not capable Of reliably doing this Every time but he does not Reject the idea that it is possible It is absolutely possible both based on Common sense based on the study we put Into the record based on the other Additional technologies that the BPD has Built into the air program by Contract explicitly Based on the information that the BPD Has told the public it will use in Order to identify individuals And indeed You're talking about well they could use it For this they could use it for that they could Use it for this but the point is in Its present operation they haven't And shouldn't we wait until the Day arrives because You've painted a This picture saying well The technology is capable of Collecting all of this information All of this individualized information But in its present Operation that's not What's happening and a lot of A lot of what you have Been concerned about I think Rightly is what might Lie over the horizon And you know when we get There then that's another case But I don't understand Those kind of individual invasions That you just brought up To be a component Of the program in its present state Judge Wilkinson Judge Gregory dropped off We're going to pause for a moment I did not Hello your honor I'm sorry about that All right Judge Wilkinson asked me Another question I'm sorry We lost you welcome back Thank you your honor The only question I raised Was that it seemed To me that your most recent Remarks had pointed Out Some very real problems That might arise with the use Of this technology And that it could be put To more invasive uses Than it presently is being put to And but my response Is it seems to me that's all Sort of speculative Because The things that you Most dread are some Of the possible Applications down the road And you also seem to Be concerned About the fact that this is The product of a contract With a private Contractor And maybe That's why you're particularly Concerned about This the degree to which A private contractor Has entered into the formulation Of the program But I don't I'm not Sure why the existence of This sort of private contract Would be Problematic Just as a presumptive matter Yeah I think there are two responses Related there so first The relevance of the private party There really is no private party in this case Because the private party Is acting as an agent of the government Under section 1983 here and the BPD does not dispute that And the district court appreciated that too so for all Purposes in this lawsuit The analyst hired For the contract etc. Mr. McNutt himself are essentially The baltimore police department And I understand Your concern that some of the concerns About the data are speculative But with respect I don't think they are because Under the contract the BPD is Collecting this information and the BPD is arguing that the constitution Doesn't regulate how they handle it And I think that's simply wrong And it also points out that The important question when Analyzing whether the collection Of particular information under the fourth Amendment is a search Is what the Results of that search could reveal Not what in fact it does Reveal and I think just going back To carpenter that point is made quite Clearly because what the government Requested in that case was seven days Of location information and it Only got two back and you can imagine Many requests where you make 180 Days of requests about location information And you get very little back But what is at issue is When you collect that Kind of information and now it is in government Hands unregulated by the fourth amendment What could that reveal And I think it's very clear that It can reveal the movements of individuals Over time and that those movements are protected By the fourth amendment Even on a public street Even on a public street and your Honor I think that even before Carpenter there was An indication from the supreme court that People's movements in public were not Categorically unprotected under the fourth Amendment and in knots The court talked about movements from One place to another and then the carpenter Court sort of cabin knots by calling It as a case about a discreet Automated journey and the carpenter Court emphasized then this case Is not about a person's movement At a particular time it's about movement Over time and again the carpenter Court then went to Except the Record seems to Show that they Cannot connect the dots from Day to day And that there's Not sufficient identification And It seems to me that it's a little bit Like The police have a witness Statement of a bank robbery And the witness says I saw a man Leaving here and he went down Left the bank with a gun And went into a 7-11 Well then they look on the tape and they see A dot that went from the bank to the 7-11 but The data Doesn't prove that they needed the Witness identification To prove that and The data collected here Is not Individualized and it can't be massaged To get any more information No matter they can't The sharpness of it they can't get any more Data out of it as they Point out it is just a Collection of movement of dots and Squares but the movement Your honor is exactly what carpenter Says is protected and again I Appreciate Carpenter Carpenter because they Talk about surveillance that For instance they talk about The fact that this does not even address Pole cameras With And I'm speaking about Carpenter the carpenter Court focused on the fact that This was perfect surveillance Of an individual And it was unexpected Surveillance and That people expected privacy But it was individualized The difference between carpenter And here is the data collected Is not individualized To any car or any person Your honor It is collected en masse and the fact That it requires a little bit of work Which is written into the contract of One single program in order to Make sense of an individual movement Does not mean that it is anonymous And again I'm sorry I keep going back to this But the bpb would not be doing this If they couldn't make sense of the data To identify people And you know carpenter was You know it did involve a request For an individual phone numbers Information and I respect That that is a difference between this case And that one but The study in the record makes clear That movements are unique Even over a short term the study that we Said in the record that the government Declined to contest at the Stage again it just just to rewind The tape a little we filed this lawsuit Before the planes went up and so The record that is before the court now Is the contract itself and the promises That the contract makes not anything Happened in the interim and You know the The fact that movements are Unique is in the record that's in the Study and that's also an implication Of carpenter for sure and So I think the idea that These are just anonymous stuff moving Around is really belied by The contract is belied by the record When mr. McNutt says that they can't Reliably track individuals across days Rather than categorically Rejecting it and I think that was a And it was intentional because It absolutely is possible for The bpb to use that information And for purposes right now It is irrelevant whether they're actually Doing that because what they Have in their hands and Perhaps it's in the hands of this private Entity but for the purposes of this lawsuit That entity is the bpb They have a database of location Information that will allow them To examine the movements Of individual dots and And then derive identifying Information about those people and Derive private and Personal information about those people And that is why This program triggers It is a search under the 4th amendment All right I think We can Let you have a Wait Thank you Thank you Good afternoon your honors And may it please the court The plaintiff's appellant Faced two insurmountable hurdles In this appeal The first is their lack of standing The harm that they allege The fear that they will be identified And that the police will be able To find a comprehensive record Of their movements is simply Too speculative to confer Standing and second Even if the plaintiff's appellant did Have standing they didn't satisfy The rigorous standard here For the extraordinary remedy of a preliminary Injunction it's not enough To simply raise a question About the program's constitutionality Even a very serious Or grave question They must You seem to be wanting to come Into the back door or the side doors with These highly technical arguments It seems to me If these are searches That violate the fourth amendment Standing exists and if they are searches That violate the fourth amendment Then the likelihood of success Is carried forward in the Injunction area in other words You're right we have to This is an area of discretion It's a preliminary injunction And there hasn't been a trial on this But if that's what you want to rest on That's a That's a procedural Argument and it Fails to address Whether there's a likelihood of success On under the fourth amendment But I think they're closely intertwined and here's why It gets to some of the points That you and judge wilkinson were making During my friend's Presentation The issue here is It's not a pixel that has A constitutional right It is an individual person that has A constitutional right and the Fourth amendment Reasonable expectation can only be invaded By a person Here the specific Harm that they're alleging is that They will be identified But even that is Highly unlikely That is what is really more I think speaks to the lack of Standing here because As this court has recognized If the alleged harm is one That follows only after An attenuated chain of possibility Then It's too speculative to Confer standing and It is true that the analysis that one Would do to Determine whether the harm is specific Enough or imminent Enough is very similar to The analysis you would do as to whether there Is any invasion of a If the police parked a vehicle Outside of my house And aimed a Listening device at my window And I understand the technology Exists that they can understand Conversations within the room And they do that from the street And they listen for Three days in a row To what we're saying in the kitchen Is that Do I have standing to challenge That even though I've not been indicted In other words They basically invaded my privacy Didn't they In that case there is no Question about Who What the harm is What is the harm in that case The harm is that the police Are able to obtain Personal identifying information about you Here Yeah but That's the argument that the Appellants are making in this case I mean it seems to me it begs the question If they are state a good claim Then they've been harmed Right If this is an unconstitutional Search And they are one of the persons that have been Searched Then they have harm don't they Well the problem is and what they assert in the reply brief Is that the mere collection Of aerial photographs Except the collection of data That's the search Right well I think they say Two different things and it's important For standing to be clear about what is The alleged harm In their complaint they assert that the alleged harm Is that they'll be identified and that their movements Will be revealed That just as a matter of fact Whether or not that establishes an invasion Of a reasonable expectation Of privacy what we're saying As respects to Standing is that just as a matter of fact That is not supported By The record before the court Or even the allegation In the complaint based on what we know about how the program Operates And again you can view This as Both a lack of standing or As the failure to Establish clearly Let me ask you this Counsel Judge Niemeyer was Pursuing A line of inquiry and I think Quite rightly that The question Is here What individualized Information Is being collected How much Do we learn About A Particular dot Or a particular dot's Movements From this program how much do we Learn from an individual About an individual from this From this surveillance Just Answer that what individual Information is collected Well nothing is Revealed by the actual photographs Themselves as has been Established Already the photographs And you can see examples on pages 39 and 40 of the joint appendix Don't reveal anything that could Ever identify an Individual or a vehicle and as judge All right but What information would the Examination What individual information Would the examination of the photograph Lead to If by examination you mean Just the photograph looking at it itself Nothing there's no Amount of massaging as judge Niemeyer said that could be done to Clarify the picture anymore and Identify someone what the BPD hopes will be useful About these photographs and this is why We're doing the pilot program is to test This it's not confirmed Is that by looking at sequential Photographs over time Analysts Can track the movement Of what appears as An anonymous dot an individual Yet to be identified and See if that person Goes past a Traditional ground-based surveillance Device and it is Only by using the conventional Ground-based device things Like surveillance cameras Or red light cameras things that already Existed before the pilot Program began only through the use Of those devices could the police Even attempt to identify Okay so what you're Saying is that the utility of The program depends on Using the photograph As a jumping off Point For more Traditional techniques More Traditional observational techniques On the ground That in and of Itself The Information collected tells you Very little if anything But But What it where it is Helpful is in Leading to Leading To Other observational patterns Or observational Techniques that Would identify An individual but how do you figure Out which individual You want to Let's Say surveil or stake Out Or which individuals Do you want to track or trace Or follow through a more Traditional manner how Do you figure that out well the Program makes it clear that The police can only track Someone who is present at the scene Of a crime and specifically one of The four target crimes we've Identified homicide Nonfatal shooting carjacking or armed Robbery or the person has To have crossed paths has to have Met with someone who was coming From the crime scene so for example You know someone in a getaway Car might the car might be Parked two blocks away from The crime scene but There's a dot seen leaving the crime Scene and getting into a car that Drives away okay so but how do You know which particular How do you know from the dot Which particular individual It is you want to You know you want you want to Follow or to observe You wouldn't know anything about That individual until the Dot is seen going Past a ground-based Surveillance tool that the Police could then check As it's been explained to me by a police Officer this is just a Tool that is used to Help police officers Focus their Investigative effort but when they're Observing the individual From the side of the street or through A surveillance camera on the Ground or whatever How do they know Which dot Is the person that They're looking for They would Not i mean what happens Is the analyst Painstakingly track A dot movement and it Takes about an hour's worth of time to track Two hours worth of movement and They would know for instance This they might be following a dot That goes past a particular intersection And they know that at that intersection There is a police surveillance Camera and so they will then look At the police surveillance Data and see Is there a person that walks by at that precise Moment but there are loads of People that go through a particular Intersection and there may be loads Of people who are at the Near the crime scene who go through that Particular intersection just because it's near The neighborhood there could be Your honor and there could also be any number of factors Like Obstructions or face coverings Or anything that would make it difficult Or impossible even if someone does Pass by a particular Camera to Be identified Counselor why don't you follow up with Judge Wilkinson The point is this You could have A hundred pixels Passed by a ground Camera the point is you can Look through all 100 By their photographs By their photographs Just plain baltimorean Law-abiding citizens Dead Because if you look at it I haven't listened very carefully in a long time The questions Good questions and comments But here In Carpenter it started with A transmission From a cell phone That's identified because it transmits To a tower that allows access To phone calls In which they call a ping A ping Is no more than a pixel In terms of making a parallel You can't do anything with just the ping Until you take the ping And then find out Whose telephone number that is And then you can identify That person by the owner of that Phone and then you can Track their movement It's the same thing here the pixel is just the beginning It's not the end It's not a matter that the pixel is Unidentifiable and you can't You don't have to It's exactly what happens You integrate it so that From the pixel You find ground locations Where there are cameras And say for example Crime scene and by the way You're not limited to a crime scene It's clear that you do this About 90% of baltimore Is under this 90% So You decide for example That 20 25 people were in the vicinity Of a crime for example So that you can search Every little search Follow those little Those pixels around Until you can get a photograph So That's what you get in your photograph And then once you do that You can do that by then License plate readers are integrated Then you'll know about the person Where they live and now you can check their criminal Records All kinds of things And the point is this It may or may not be a written law Crime detection But our founders were brilliant in the sense that When they wrote this That it's the protection of the innocent And yes there are people Who may be perpetrators of crime That may fall in that safe But we call that safe harbor Constitutional protection So you can run through 200 people That picture Oh there she is there he is That's not the one we want I don't know Then you can start deciding Who looks like somebody who may have been at the crime That's when you start getting into race for example Gender What they dress like That's where To say that this pixel Is just like the pain It's the jump off point And what it does It allows you to just go through Like Judge Wilkinson said Many people go through intersections So you get to look at all of those people And then you get interested Then you can follow these people Then you don't need the pixel anymore We know who that person is Then we can follow what they're The police can then use ground surveillance With cars and follow them Right? Correct but I want to clarify a few things First it is true that the cameras When there are three planes flying at full capacity The photographs are covering 90% of the city But as to who Which of the dots that appear In the photographs representing Individuals and vehicles As to which of those will even be Tracked in the first place And potentially identified Only those that are at A crime scene or Cross paths with someone At a crime scene Would ever be Looked at, tracked or analyzed Or attempted Oh that's what you say Once you get the data That would turn the fourth amendment on its head We'll violate the constitutional rights But we'll decide which one will come to fruition In terms of what we're looking at That's like someone invading your privacy With a camera and taking a photograph of you And you say well there's no problem Because we've got the developing theory It's done The harm is done In the first instance Of collecting the data that allows This personal individualized identification And that's what it is I'm sure you disagree But isn't it true That this pixel Clearly and easily turns into A photograph of individuals In Baltimore who have Nothing to do with crime Absolutely it could As a snapshot in time But that does not implicate the fourth amendment The fourth amendment has never said The supreme court has never said that the fourth amendment Prohibits observation Of movements in public Over a short period of time From point A to point B So even if the police are able to Pull footage from A surveillance camera And see 20-25 people go by That's all the information they have Is that at that moment in time These 25 people were there In a public space by the way This is not a program that would allow police To look into private residences Or private buildings I suppose every investigation In its initial stages Or many investigations In their initial stages Cast something of a Wide net Absolutely And You know There's a lot of Information that the Police collect That they never make Use of And Some information Collection is legitimate And others Are Other means of collecting information Are not It's Entirely Legitimate to collect all the information Forensic Evidence Eyewitness testimony Personal Items around the crime scene That doesn't Raise any question That sort of Collection of information On the other hand Surveilling a telephone Conversation Without a warrant Raises all kinds of Problems And so what you're Dealing with here Is the collection of information By itself Doesn't Violate the fourth amendment The question is How is it collected And your argument As I understand it is That it's Collected in one of the Narrowest In one of the narrowest Ways possible But The question I have Is Has this program Yielded some real World results I mean is it the kind of thing That you have Some Some Tangible law enforcement Benefits to show for it Your honor the record As it was before the district court Didn't have anything of course because the program Hadn't resulted I can tell you That publicly And you don't have the record now do you Correct Are you trying to add to the record No I'm not trying to add to the record I was just going to make reference to something that the commissioner Made publicly that was reported in newspapers So if your honors were interested in If you wanted to To respond to judge Wilkinson's comment I could just say That the commissioner said that I Believe there were two arrests that The police attribute To the use of this program But I don't know anything more about The success of the program and that frankly Is why the department is Undertaking this pilot program is to See if it is effective But it is Generally true that Movement in public Are not Do not implicate a reasonable expectation Of privacy it is true That in cases such as jones And carpenter the supreme court Said that if There is a certain quantum Of Data that the government Obtained over a Long period of time that Reveals information about a person's Movement then you might trigger the Fourth amendment but we don't have that here In the limitations of the program Most notably the 12 hour gap in the Flight I'm sorry does someone have a question Okay maybe I'm just hearing feedback But The gap in the Collection of Data of the flight Taking photographs And the limited Resolution of The photograph Which makes it impossible To know for instance if A pixel representing an individual Goes into a building whether That Whether Can you respond to this question Can you talk about the 12 hour gap Isn't that Really sort of Anyway I want to characterize This but the question is this 12 hours Makes no difference because once You let's say at 9 o'clock in the morning In the morning you get A pixel of a person correct Now Okay 9 o'clock in the morning And you Then follow that pixel For whatever reason they want Really pss and do whatever they want We don't know but they might do it But they haven't they haven't And then they locate a Camera where you pass through Or many people pass Through anyway and once they Have that An identifiable information like a license Plate number or face Recognition type of Indication which we have now In many ways you know license plates Photographs Uploaded and censored can be used For face recognition So you can match that and integrate with data Once I know who you are I don't need Any more Aerial surveillance for your movement I can quite easily Know your movement to detail So this is very detailed Because I said okay that's John Doe Because I found out by his license By his driver's license And then I know where he lives So now We can just follow him See that's the red herring Of the argument Or it's just a short period of time No it's not That pixel is the beginning Of following you quite Individually And deliberate For the next six months if they want Isn't that true Isn't it true That from that nine o'clock in the morning Pixel They can then get the information As soon as you hit that camera Which could be one minute later Or one hour later Whatever They have enough information from that To locate where you live Who you are, what your race is, gender Everything And then just following you Is that not true They can do that No no I didn't ask you do they do it I'm saying I just told you isn't that true Is it possible No not possible It can be done Well I want to clarify the question To make sure I answer it precisely To clarify the question Ask me to ask it again I can clarify my own But if you don't understand I'll ask it again My question is I think it's very simple Nine o'clock in the morning You get the pixel And then at 9.02 They pass a ground camera You get their photograph You can use facial recognition Or if it's a reader You just call DMV Get their address, their name Everything And then a police car Can just follow you individually No you cannot do that Your honor and here's why Because the program is not a real time tracking So it is true up to a point What you said about They could pick a pixel That represents an individual And look back at a photograph I see my time has elapsed You don't mind I can't imagine I apologize that's the first bill I heard But anyways Because it's not real time tracking The photographs aren't necessarily Retrospective looking So it is true as you say That police could look at a pixel Look at a dot and see that that's a person Coming out of a house on a date in the past And then see that that person In the past Went past a ground based surveillance tool Like a poll camera They could then pull the information As you said That's available on the poll camera From the footage But they could not send a cop out there And follow him because it's in the past Who knows where he is now Wait a minute You missed something there You didn't tell me once they found out By your reader By your cop And if a reader comes through They can't find out who you are By reading your license plate No, I think I misunderstood I understood you to be saying At the moment he passes that poll camera Police would know where he is And could immediately Oh no, this is about identification Identification Yes, they could identify him And then if they want to use traditional Shoe leather detective work And follow someone Yes, they could do that Right, and that's for any individual Who becomes a pixel Becomes a pixel In their data collection That's for anyone Who becomes a pixel But your honor, it's no different They could already just pull footage off a poll camera That is near a crime scene Or a suspect's house And get that same information And then use traditional Traditional surveillance techniques But I do also need to clarify one other thing Technologically Yes, that could be done But under the memorandum of understanding As to how the police Have agreed to use this technology What you described Would not happen Unless it was clear By some sort of Ground-based surveillance tool That from the beginning The person that they were tracking Was in fact someone who had been present At the Scene of a crime Specifically homicide, non-fatal shooting, carjacking Or armed robbery Or had crossed paths with But that's the beauty of our Constitution You can't make a contract You can't violate Fourth Amendment And make a contract that you were going to Use in a limited way The violation of courage is a violation already Well You're saying Oh, we got it, but we'll agree Not to use it That's the beauty of the framework They don't leave it to the Government just to say I'm going to put this in archives and put it It is the data collection itself That is the violation that allows Them to use it, it allows identification It's not that you can say Oh yeah, but we contracted to limit ourselves No, the Constitution already did that 270 years ago Respectfully, Your Honor, I don't Believe that that's what the Supreme Court has said Because even Carpenter took great pain To restrict its holding To the narrow factual Situation before it And the Court said nothing in its Decision meant to call into question More traditional surveillance techniques So let me ask you this Is the question You're opposing to us How The How the information is collected Or what use Is made of the information And I Maybe I As I understand it The focus of the case today Is on How the information Is collected Maybe Less so on what use Is actually made of it But the question is Does the method By which the information is Collected Does that violate Fourth Amendment Privacy interests Now the use that's made of it May or may not Violate privacy interests But is that a question for another day Absolutely, Your Honor Because as you point out, the record before this Court is the undeveloped Record that was before the District Court Before this program even took effect But there's a danger Here is there not of going Too far afield And we don't want to We don't want to bless A whole lot of uses of the information Which might be Quite damaging so I Thought that the Narrow question posed to the Court is Requires Focusing on how By what method is the Information collected And does that method Of collection Violate Constitutional Privacy interests And I thought that the uses that may Be made of the information or that may not Have belong to Another day And a former record And some other things Is that My understanding of it correct I think that's a fair characterization It's got to be Because poll cameras Collect pictures of everybody Just like Judge Gregory hypothesized And the government Could take those photographs And start stalking you Just like Judge Gregory said So it's not just a collection Of that data That we It's a more complex Problem But the poll cameras are collecting data Every day Every day I walk out to get a sandwich I'm on a poll camera That's correct and I don't understand the plaintiffs To be saying that They would be concerned If The police department was Taking aerial photographs of everyone And just Doing that alone Their concern is being identified But As you point out With poll cameras These are all conventional Based surveillance tools It's just a matter of using them in a different way The only thing the photographs here do Is help police use traditional Ground-based devices in a more Efficient way And as Judge Wilkinson pointed out Baltimore is beleaguered by violence We are facing unprecedented rates Of homicides That police are using a technology to aid In observations of movements in public Does not convert this surveillance Into a Fourth Amendment search The Supreme Court has never equated Efficiency with unconstitutionality Isn't it efficient To try to get Cell phone numbers from people From that team? That's efficient You think the Supreme Court Didn't realize that if you allow this It might help crime Detection Absolutely not But I think the difference Carpenter is distinguishable in a few ways First as Judge Niemeyer has emphasized The court was really struck By the encyclopedic record Of a person's movement That particular type of data Historical cell site location information Was able to provide About a person's movement In that case they emphasized That there was an average of 101 data points per day And that even when the phone Is not being used as long as it's turned on It's constantly Creating data points It converts the phone almost Into a tracking device How many data points does TSS get per day? I don't know how we would define Data points You had no problem Defining for Carpenter What was the data point for Carpenter? Well there I guess The ping Exactly Your ping Carpenter's ping is your pixel I don't think It has to be I think the pixel It would be more like saying It's the hit on the traditional Ground based surveillance Because that's the only time you can identify Someone in particular At a particular place Before they hit a ground based Surveillance device They're just an anonymous dot Okay what about the ping? The ping Means nothing until you go to A phone Provider to find out who owns it Right and that's another Significant distinction between Carpenter And our situation In Carpenter the court also emphasized The ease with which the police could obtain That's what was particularly troubling To the court that as they described it Just the click of a button Suddenly the police had this voluminous Amount of information Here this is actually still a quite Labor intensive enterprise Because an analyst looking at Anonymous dots still has to work A full hour to track two hours Worth of movement Someone has to then check the ground based Surveillance devices To even attempt to try and identify Anyone That's easy I mean You're a little naive In that response In terms of data collection That could turn To a ground identification In less than An hour I'm sorry I didn't mean to cut you off Your honor How much they would know about them What they look like With a phone you don't know what they look like For example It's even more invasive because a phone Somebody else may have my phone And you would get the same data But no one else has me So you will always get me So in this case It's stronger In terms of The claim here because Anybody can have my phone But I walk out I can't hide myself So that pixel is me All the time Am I correct No because The difference here your honor Is that I just mean as to the Fourth amendment implications of this case The concern in Carpenter was that What police were able to figure out Was a person's movement Over an extended period of time Here the most that Police could figure out Here is a person's movement Generally from point A to point B Maybe a few stops But only within a 12 hour period Because yes you could The next day try and Guess which pixel Could represent another person But you would have no way of knowing With any reliability There always has to be validation on the ground And there's always going to be a gap Of what happened in those 12 hours When there was no plane Flying to take imagery From which anyone could even attempt To track movement and make an identification And that's what's different Here from Carpenter In addition to the other factors That I mentioned All right counsel I didn't hear a ping But is the time up Yes sir Can you hear me Yes sir I did I didn't hear a ping All right All right Very well Thank you so much Thank you your honor I just want to make a few quick points So if there were any doubts About whether the record shows This program will identify people The government just dispelled them The defendants again used the word impossible But then later admitted That it could only The you know Idea that they can't track across days Was simply something that they can't do reliably And that's what Mr. McNutt said But that is an admission that it's possible In addition The identification through this program Is not as the government suggests Learning that a person was near A particular CCTV camera At a point in time It is about using that information To then follow that person around Retrospectively At a minimum for 12 hours But as the record and Mr. McNutt's statement Makes clear and my adversary's Statement made clear today They are able to do that for a much longer period of time As well Second defendants emphasized the limitations In the program that have been written into the contract That there are a couple of responses there First as to the potentiality of abuse In Carpenter Police only looked at a few location points About a few crimes in the data set That they collected But what the court was concerned about Was the possible invasion of the privacy Over the whole period track So the limitations that the BPD Has written in here Are simply irrelevant to the Fourth Amendment question As Chief Justice Robertson and Riley The founders did not fight a revolution To gain the right to government agency protocols And if this search Is not regulated by the Fourth Amendment Then the rules that the BPD says Protect privacy Could be changed at when And that kind of indiscriminate power Over a large data set Is something this court has come back to In cases time and time again Including most recently in Wiles About the trash pull Where the court explained That indiscriminate surveillance Implicates the central concern underlying the Fourth Amendment The concern about giving police officers Too much discretion to rummage at will Among private effects And again people's movements over time Are a private effect under the Fourth Amendment Next point Our argument does not implicate the use of CCTV Or ALPR or poll cameras on its own What is happening here Is a collection of information from the sky That simply changes the game It gives the BPD a key That will unlock a database Of every Baltimorean's movements over time And the collection is what is at stake And the collection is what provides police With that information about movements I just want to close with a couple References to Carpenter That I think make clear the stakes of this case As Carpenter Court said Chief Justice Roberts As technology has enhanced the government's capacity To encroach upon areas normally guarded From inquisitive eyes This court has sought to assure preservation Of that degree of privacy Against government that existed when the Fourth Amendment Was adopted And respectfully the founders and the drafters of the Fourth Amendment Would be absolutely horrified By what is going on in Baltimore right now My final point Carpenter points to the retrospective quality Of the data As a very significant element And my adversary plays down that quality But that is its most important element As the Carpenter Court said At 2218 The retrospective quality of the data here Gives police access to a category of information That is otherwise unknowable And with access to this kind of information The government can now travel back in time And retrace a person's whereabouts Subject only to the retention policies In that case of the wireless carriers And here the policies of the BB Has written into its own contract Would that Would that If that statement is As broad as you say it is Would that outlaw all poll cameras? Not at all your honor Because what Carpenter is talking about You go back on the film and see who went through But Excuse me I'm sorry your honor Poll cameras are a bit different Because they're static But what the Carpenter Court is talking about Is not just any retrospective data Of course requests for all kinds of data Are retrospective in their nature What the Carpenter Court is talking about Is retrospective location information That allows the government to essentially When it becomes interested in someone Go back in time Because in practice it is essentially Well under this program Followed around 600,000 people a day Isn't that What a poll camera does? I learned I learned that there was a hold up At a 7-11 And I go back and get the poll cameras To find out retrospectively Who was there Well a poll camera doesn't capture A person's movement over time Which is what is protected under Carpenter I understand that there may be Arguments out there that capturing A person's photograph on a public street Is protected by the Fourth Amendment as well But that's not what this case is about This case is about collective movements Being captured from overhead And as part of the same program Photographs are then used to connect the dots Identify people And as Chief Judge Gregory explained Then be able to With an identity follow a person around over time And that is absolutely protected Under Carpenter This program violates the Fourth Amendment And I appreciate The court giving us so much time To talk about these issues today And with that I think Thank you Counsel And I want to thank you both We appreciate it We can't come down and reach you As we would on all the wonderful court services But know that nonetheless We very much appreciate your audience In the case And thank you so much And I'll ask the court to adjourn court for the day
judges: Roger L. Gregory, J. Harvie Wilkinson III, Paul V. Niemeyer